**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| COUNTY OF SAN MATEO, individually and on behalf of the People of the State of California, *Plaintiff-Appellee*, | No. 18-15499 |
| | D.C. No. 3:17-cv-04929-VC |
| v. | |
| CHEVRON CORPORATION; CHEVRON U.S.A. INC.; EXXONMOBIL CORPORATION; BP PLC; BP AMERICA, INC.; ROYAL DUTCH SHELL PLC; SHELL OIL PRODUCTS COMPANY LLC; CITGO PETROLEUM CORPORATION; CONOCOPHILLIPS; CONOCOPHILLIPS COMPANY; PHILLIPS 66 COMPANY; PEABODY ENERGY CORPORATION; TOTAL E&P USA, INC.; TOTAL SPECIALTIES USA, INC.; ARCH COAL INC.; ENI OIL & GAS, INC.; RIO TINTO ENERGY AMERICA, INC.; RIO TINTO MINERALS, INC.; RIO TINTO SERVICES, INC.; ANADARKO PETROLEUM CORPORATION; OCCIDENTAL PETROLEUM CORPORATION; OCCIDENTAL CHEMICAL CORPORATION; REPSOL ENERGY | |

NORTH AMERICA CORP.; REPSOL
TRADING USA CORP.;
MARATHON OIL COMPANY;
MARATHON OIL CORPORATION;
MARATHON PETROLEUM CORP.;
HESS CORP.; DEVON ENERGY
CORP.; DEVON ENERGY
PRODUCTION COMPANY, LP;
ENCANA CORPORATION; APACHE
CORP.,
          *Defendants-Appellants.*

---

CITY OF IMPERIAL BEACH,                    No. 18-15502
individually and on behalf of the
People of the State of California,         D.C. No.
          *Plaintiff-Appellee*,           3:17-cv-04934-VC

          v.

CHEVRON CORPORATION;
CHEVRON U.S.A. INC.;
EXXONMOBIL CORPORATION; BP
PLC; BP AMERICA, INC.; ROYAL
DUTCH SHELL PLC; SHELL OIL
PRODUCTS COMPANY LLC;
CITGO PETROLEUM
CORPORATION; CONOCOPHILLIPS;
CONOCOPHILLIPS COMPANY;
PHILLIPS 66 COMPANY; PEABODY
ENERGY CORPORATION; TOTAL
E&P USA, INC.; TOTAL
SPECIALTIES USA, INC.; ARCH

COAL INC.; ENI OIL & GAS, INC.;
RIO TINTO ENERGY AMERICA,
INC.; RIO TINTO MINERALS, INC.;
RIO TINTO SERVICES, INC.;
ANADARKO PETROLEUM
CORPORATION; OCCIDENTAL
PETROLEUM CORPORATION;
OCCIDENTAL CHEMICAL
CORPORATION; REPSOL ENERGY
NORTH AMERICA CORP.; REPSOL
TRADING USA CORP.;
MARATHON OIL COMPANY;
MARATHON OIL CORPORATION;
MARATHON PETROLEUM CORP.;
HESS CORP.; DEVON ENERGY
CORP.; DEVON ENERGY
PRODUCTION COMPANY, LP;
ENCANA CORPORATION; APACHE
CORP.,
                    *Defendants-Appellants.*

COUNTY OF MARIN, individually        No. 18-15503
and on behalf of the People of the
State of California,                  D.C. No.
                    *Plaintiff-Appellee*,   3:17-cv-04935-VC

                    v.

CHEVRON CORPORATION;
CHEVRON U.S.A. INC.;
EXXONMOBIL CORPORATION; BP

PLC; BP AMERICA, INC.; ROYAL
DUTCH SHELL PLC; SHELL OIL
PRODUCTS COMPANY LLC;
CITGO PETROLEUM
CORPORATION; CONOCOPHILLIPS;
CONOCOPHILLIPS COMPANY;
PHILLIPS 66 COMPANY; PEABODY
ENERGY CORPORATION; TOTAL
E&P USA, INC.; TOTAL
SPECIALTIES USA, INC.; ARCH
COAL INC.; ENI OIL & GAS, INC.;
RIO TINTO ENERGY AMERICA,
INC.; RIO TINTO MINERALS, INC.;
RIO TINTO SERVICES, INC.;
ANADARKO PETROLEUM
CORPORATION; OCCIDENTAL
PETROLEUM CORPORATION;
OCCIDENTAL CHEMICAL
CORPORATION; REPSOL ENERGY
NORTH AMERICA CORP.; REPSOL
TRADING USA CORP.;
MARATHON OIL COMPANY;
MARATHON OIL CORPORATION;
MARATHON PETROLEUM CORP.;
HESS CORP.; DEVON ENERGY
CORP.; DEVON ENERGY
PRODUCTION COMPANY, LP;
ENCANA CORPORATION; APACHE
CORP.,

> *Defendants-Appellants.*

| | |
|---|---|
| COUNTY OF SANTA CRUZ, individually and on behalf of The People of the State of California; CITY OF SANTA CRUZ, a municipal corporation, individually and on behalf of The People of the State of California; CITY OF RICHMOND, individually and on behalf of The People of the State of California, *Plaintiffs-Appellees*, | No. 18-16376 |
| | D.C. Nos. 3:18-cv-00450-VC 3:18-cv-00458-VC 3:18-cv-00732-VC |
| v. | OPINION |
| CHEVRON CORPORATION; CHEVRON USA INC.; ROYAL DUTCH SHELL PLC; BP PLC; SHELL OIL PRODUCTS COMPANY LLC; BP AMERICA, INC.; EXXON MOBIL CORPORATION; CONOCOPHILLIPS; CONOCOPHILLIPS COMPANY; ANADARKO PETROLEUM CORPORATION; APACHE CORPORATION; DEVON ENERGY CORPORATION; DEVON ENERGY PRODUCTION COMPANY, LP; TOTAL E&P USA, INC.; TOTAL SPECIALTIES USA, INC.; ENCANA CORPORATION; CITGO PETROLEUM CORPORATION; HESS CORPORATION; MARATHON OIL COMPANY; MARATHON OIL | |

CORPORATION; REPSOL ENERGY
NORTH AMERICA CORPORATION;
REPSOL TRADING USA
CORPORATION; PHILLIPS 66
COMPANY; OCCIDENTAL
PETROLEUM CORPORATION;
OCCIDENTAL CHEMICAL
CORPORATION; ENI OIL & GAS,
INC.; MARATHON PETROLEUM
CORPORATION,
           *Defendants-Appellants.*

Appeal from the United States District Court
for the Northern District of California
Vince Chhabria, District Judge, Presiding

Argued and Submitted February 5, 2020
Pasadena, California

Filed May 26, 2020

Before:  Sandra S. Ikuta, Morgan Christen, and
Kenneth K. Lee, Circuit Judges.

Opinion by Judge Ikuta

## SUMMARY[*]

### Removal/Subject-Matter Jurisdiction/Appellate Jurisdiction

On appeal from the district court's order remanding complaints to the state court from which they had been removed, the panel dismissed the appeal in part for lack of jurisdiction and affirmed in part, holding that defendants did not carry their burden of establishing the criteria for federal-officer removal under 28 U.S.C. § 1442(a)(1).

The County of San Mateo and other cities and counties filed six complaints in California state court against more than thirty energy companies, alleging nuisance and other causes of action arising from the role of fossil fuel products in global warming.  The energy companies removed the cases to federal court.  The district court granted plaintiffs' motions to remand, rejecting all eight of the grounds on which the energy companies relied for subject-matter jurisdiction.

Dismissing in part, the panel held that under 28 U.S.C. § 1447(d), it had jurisdiction to review the removal order only to the extent the order addressed whether removal was proper under § 1442(a)(1).  The panel concluded that the nonreviewability clause of § 1447(d) applied because the district court remanded based on a lack of subject-matter jurisdiction.  Declining to follow the Seventh Circuit, the panel held that under the "exception clause" of § 1447(d), authorizing review of removal pursuant to 28 U.S.C. §§ 1442 and 1443, it had

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

jurisdiction to review whether removal was proper under § 1442(a)(1), but the exception clause did not subject the district court's entire remand order to plenary review. The panel followed *Patel v. Del Taco, Inc.*, 446 F.3d 996 (9th Cir. 2006), concluding that *Patel* was not abrogated either by intervening judicial authority or by Congress's 2011 amendment of § 1447(d) to insert § 1442.

Affirming in part, the panel held that the district court did not err in holding that there was no subject-matter jurisdiction under the federal-officer removal statute. The panel concluded that the energy companies failed to establish that they were "acting under" a federal officer's directions based on three agreements with the government: CITGO's fuel supply agreements with the Navy Exchange Service Command, a unit agreement for the petroleum reserves at Elk Hills between Standard Oil Company of California and the U.S. Navy, and the energy companies' Oil and Gas Leases of Submerged Lands Under the Outer Continental Shelf Lands Act.

## COUNSEL

Theodore J. Boutrous, Jr. (argued), Andrea E. Neuman, William E. Thomson, and Joshua S. Lipshutz, Gibson Dunn & Crutcher LLP, Los Angeles, California; Herbert J. Stern and Joel M. Silverstein, Stern & Kilcullen LLC, Florham Park, New Jersey; Neal S. Manne, Johnny W. Carter, Erica Harris, and Steven Shepard, Susman Godfrey LLP, Houston, Texas; for Defendants-Appellants Chevron Corporation and Chevron U.S.A. Inc.

Jonathan W. Hughes, Arnold & Porter Kaye Scholer LLP, San Francisco, California; Matthew T. Heartney and John D. Lombardo, Arnold & Porter Kaye Scholer LLP, Los Angeles, California; Philip H. Curtis and Nancy Milburn, Arnold & Porter Kaye Scholer LLP, New York, New York; for Defendants-Appellants BP PLC and BP America, Inc.

Sean C. Grimsley and Jameson R. Jones, Bartlit Beck LLP, Denver, Colorado; Megan R. Nishikawa and Nicholas A. Miller-Stratton, King & Spalding LLP, San Francisco, California; Tracie J. Renfroe and Carol M. Wood, King & Spalding LLP, Houston, Texas; for Defendants-Appellants ConocoPhillips and ConocoPhillips Company.

M. Randall Oppenheimer and Dawn Sestito, O'Melveny & Myers LLP, Los Angeles, California; Theodore V. Wells, Jr., Daniel J. Toal, and Jaren E. Janghorbani, Paul Weiss Rifkind Wharton & Garrison LLP, New York, New York; for Defendant-Appellant Exxon Mobil Corporation.

Daniel B. Levin, Munger Tolles & Olson LLP, Los Angeles, California; Jerome C. Roth and Elizabeth A. Kim, Munger Tolles & Olson LLP, San Francisco, California; David C. Frederick and Brendan J. Crimmins, Kellogg Hansen Todd Figel & Frederick P.L.L.C., Washington, D.C.; for Defendants-Appellants Royal Dutch Shell PLC and Shell Oil Products Company LLC.

Bryan M. Killian, Morgan Lewis & Bockius LLP, Washington, D.C.; James J. Dragna and Yardena R. Zwang-Weissman, Morgan Lewis & Bockius LLP, Los Angeles, California; for Defendant-Appellant Anadarko Petroleum Corporation.

Thomas F. Koegel, Crowell & Moring LLP, San Francisco, California; Kathleen Taylor Sooy and Tracy A. Roman, Crowell & Moring LLP, Washington, D.C.; for Defendant-Appellant Arch Coal Inc.

Mortimer Hartwell, Vinson & Elkins LLP, San Francisco, California; Patrick W. Mizell and Deborah C. Milner, Vinson & Elkins LLP, Houston, Texas; for Defendant-Appellant Apache Corp.

William M. Sloan and Jessica L. Grant, Venable LLP, San Francisco, California; for Defendant-Appellant Peabody Energy Corporation.

Mark McKane P.C., Kirkland & Ellis LLP, San Francisco, California; Andrew A. Kassof, P.C., and Brenton Rogers, Kirkland & Ellis LLP, Chicago, Illinois; for Defendants-Appellants Rio Tinto Energy America, Inc.; Rio Tinto Minerals, Inc.; and Rio Tinto Services, Inc.

Gregory Evans, McGuireWoods LLP, Los Angeles, California; Steven R. Williams, Joy C. Fuhr, and Brian D. Schmalzbach, McGuireWoods LLP, Richmond, Virginia; for Defendants-Appellants Devon Energy Corp. and Devon Energy Production Company, LP.

Christopher W. Keegan, Kirkland & Ellis LLP, San Francisco, California; Andrew R. McGaan, P.C., Kirkland & Ellis LLP, Chicago, Illinois; Anna G. Rotman, P.C., Kirkland & Ellis LLP, Houston, Texas; Bryan D. Rohm, Total E&P USA, Inc., Houston, Texas; for Defendants-Appellants Total E&P USA, Inc.; and Total Specialties USA, Inc.

Michael F. Healy, Shook Hardy & Bacon LLP, San Francisco, California; Michael L. Fox, Duane Morris LLP, San Francisco, California; for Defendant-Appellant Encana Corporation.

Craig A. Moyer and Peter Duchesneau, Manatt Phelps & Phillips LLP, Los Angeles, California; Stephanie A. Roeser, Manatt Phelps & Phillips LLP, San Francisco, California; Nathan P. Eimer, Lisa S. Meyer, Pamela R. Hanebutt, and Raphael Janove, Eimer Stahl LLP, Chicago, Illinois; for Defendant-Appellant CITGO Petroleum Corporation.

Christopher J. Carr and Jonathan A. Shapiro, Baker Botts L.L.P., San Francisco, California; Scott Janoe, Baker Botts L.L.P., Houston, Texas; Evan Young, Baker Botts L.L.P., Austin, Texas; Megan Berge, Baker Botts L.L.P., Washington, D.C.; for Defendants-Appellants Hess Corp., Marathon Oil Company, Marathon Oil Corporation, Repsol Energy North America Corp., and Repsol Trading USA Corp.

Steven M. Bauer and Margaret A. Tough, Latham & Watkins LLP, San Francisco, California; for Defendant-Appellant Phillips 66 Company.

David E. Cranston, Greenberg Glusker Fields Claman & Machtinger LLP, Los Angeles, California; for Defendant-Appellant Eni Oil & Gas, Inc.

Marc A. Fuller and Matthew R. Stammel, Vinson & Elkins L.L.P., Dallas, Texas; Stephen C. Lewis and R. Morgan Gilhuly, Barg Coffin Lewis & Trapp LLP, San Francisco, California; for Defendants-Appellants Occidental Petroleum Corporation and Occidental Chemical Corporation.

Shannon S. Broome and Ann Marie Mortimer, Hunton Andrews Kurth LLP, San Francisco, California; Shawn Patrick Regan, Hunton Andrews Kurth LLP, New York, New York; for Defendant-Appellant Marathon Petroleum Corp.

Victor M. Sher (argued), Matthew K. Edling, Katie H. Jones, and Martin D. Quiñones, Sher Edling LLP, San Francisco, California; Kevin K. Russell, Sarah E. Harrington, and Charles H. Davis, Goldstein & Russell P.C., Bethesda, Maryland; for Plaintiffs-Appellees.

John C. Beiers, Paul A. Okada, David A. Silberman, Margaret V. Tides, and Matthew J. Sanders, Office of the County Counsel, Redwood City, California; for Plaintiff-Appellee County of San Mateo.

Brian E. Washington, Brian C. Case, and Brandon Halter, Office of the County Counsel, San Rafael, California, for Plaintiff-Appellee County of Marin.

Jennifer Lyon and Steven E. Boehmer, McDougal Love Boehmer Foley Lyon & Canlas, Office of the City Attorney, La Mesa, California, for Plaintiff-Appellee City of Imperial Beach.

Dana McRae and Jordan Sheinbaum, Office of the County Counsel, Santa Cruz, California, for Plaintiff-Appellee County of Santa Cruz.

Anthony P. Condotti, City Attorney, Santa Cruz, California, for Plaintiff-Appellee City of Santa Cruz.

Bruce Reed Goodmiller and Rachel H. Sommovilla, City Attorney's Office, Richmond, California, for Plaintiff-Appellee City of Richmond.

Steven P. Lehotsky, Michael B. Schon, and Jonathan D. Urick, U.S. Chamber Litigation Center, Washington, D.C.; Peter D. Keisler, C. Frederick Beckner III, Ryan C. Morris, and Tobias S. Loss-Eaton, Sidley Austin LLP, Washington, D.C.; for Amicus Curiae Chamber of Commerce of the United States of America.

Gerson H. Smoger, Smoger & Associates P.C., Dallas, Texas; Robert S. Peck, Center for Constitutional Litigation P.C., Washington, D.C.; for Amicus Curiae Senator Sheldon Whitehouse.

Scott L. Nelson and Allison M. Zieve, Public Citizen Litigation Group, Washington, D.C., for Amicus Curiae Public Citizen, Inc.

James R. Williams, County Counsel; Greta S. Hansen, Chief Assistant County Counsel; Laura S. Trice, Lead Deputy County Counsel; Tony LoPresti, Deputy County Counsel; Office of the County Counsel, County of Santa Clara, San José, California; for Amicus Curiae California State Association of Counties.

Ian Fein, Natural Resources Defense Council, San Francisco, California; Peter Huffman, Natural Resources Defense Council, Washington, D.C.; for Amicus Curiae Natural Resources Defense Council.

**OPINION**

IKUTA, Circuit Judge:

In this appeal, we consider a district court's order remanding complaints to state court after the defendants had removed the complaints to federal court on eight separate grounds. Under 28 U.S.C. § 1447(d), we have jurisdiction to review the remand order only to the extent it addresses whether removal was proper under § 1442(a)(1), *see Patel v. Del Taco, Inc.*, 446 F.3d 996, 998 (9th Cir. 2006), which authorizes removal by "any person acting under" a federal officer, 28 U.S.C. § 1442(a)(1). We conclude that the defendants did not carry their burden of establishing this criteria for removal. Because we lack jurisdiction to review other aspects of the remand order, we dismiss the remainder of the appeal.

I

The County of San Mateo, the County of Marin, and the City of Imperial Beach filed three materially similar complaints in California state court against more than 30 energy companies in July 2017.[1] The complaints allege that the Energy Companies' "extraction, refining, and/or formulation of fossil fuel products; their introduction of fossil fuel products into the stream of commerce; their wrongful promotion of their fossil fuel products and concealment of known hazards associated with use of those products; and their failure to pursue less hazardous alternatives available to them; is a substantial factor in causing the increase in global

---

[1] We refer to the plaintiffs collectively as the "Counties" and to the defendants collectively as the "Energy Companies."

mean temperature and consequent increase in global mean sea surface height." Based on these allegations, the complaints assert causes of action for public and private nuisance, strict liability for failure to warn, strict liability for design defect, negligence, negligent failure to warn, and trespass.

The Energy Companies removed the three complaints to federal court, asserting seven bases for subject-matter jurisdiction, including jurisdiction under the federal-officer removal statute, 28 U.S.C. § 1442(a)(1). The three cases were assigned to Judge Vince G. Chhabria.

Shortly thereafter, the County of Santa Cruz, the City of Santa Cruz, and the City of Richmond filed materially similar complaints in California state court. The Energy Companies removed these cases to federal court as well, asserting the same seven bases for subject-matter jurisdiction,[2] and they were also assigned to Judge Chhabria.[3]

The Counties, in all six cases, moved to remand to state court based on a lack of subject-matter jurisdiction. In a reasoned opinion, the district court rejected all eight of the

---

[2] Marathon Petroleum Corporation raised an eighth ground for removal: that the complaints raised issues concerning maritime activities, giving rise to admiralty jurisdiction. *See* 28 U.S.C. § 1333.

[3] The city attorneys of Oakland and San Francisco filed similar actions in California state court. Those cases were removed and assigned to Judge William H. Alsup, who subsequently dismissed the action for failure to state a claim and for lack of personal jurisdiction. *See City of Oakland v. BP p.l.c.*, 325 F. Supp. 3d 1017 (N.D. Cal. 2018); *City of Oakland v. BP p.l.c.*, 2018 WL 3609055 (N.D. Cal. July 27, 2018). In a concurrently filed opinion, we resolve the appeal from those cases. *See City of Oakland v. BP p.l.c.*, — F.3d — (9th Cir. 2020).

grounds on which the Energy Companies relied for subject-matter jurisdiction, but the district court stayed its remand orders to give the Energy Companies an opportunity to appeal.  "[W]e have jurisdiction to determine whether we have jurisdiction to hear [a] case."  *Atl. Nat'l Tr. LLC v. Mt. Hawley Ins. Co.*, 621 F.3d 931, 933 (9th Cir. 2010) (citation omitted).

## II

Our authority to review an order remanding a case to state court is limited.  Under 28 U.S.C. § 1447(d), "[1] [a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise, [2] except that an order remanding a case to the State court from which it was removed pursuant to section 1442 or 1443 of this title shall be reviewable by appeal or otherwise."  We consider the Energy Companies' arguments that we may conduct a plenary review of the district court's remand order under both of these clauses.

## A

Although the first clause in § 1447(d) (the "non-reviewability clause") broadly prohibits review of "[a]n order remanding a case to the State court from which it was removed," the Supreme Court has interpreted this language narrowly as prohibiting review only if a remand order was issued based on a ground enumerated in § 1447(c).[4]  *Atl. Nat'l*

---

[4] Section 1447(c) states, in pertinent part:

A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be

*Tr.*, 621 F.3d at 934 (citing *Thermtron Prods., Inc. v. Hermansdorfer*, 423 U.S. 336, 343 (1976)).  When a district court bases its remand order on one of the grounds in § 1447(c)—i.e., the district court "remands based on subject matter jurisdiction [or] nonjurisdictional defects"—as opposed to, for example, based on a merits determination or concerns about a heavy docket, *id.* at 934–35, "review is unavailable no matter how plain the legal error in ordering the remand," *Briscoe v. Bell*, 432 U.S. 404, 413 n.13 (1977).  "[R]eview of the District Court's characterization of its remand as resting upon lack of subject-matter jurisdiction, to the extent it is permissible at all, should be limited to confirming that that characterization was colorable." *Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224, 234 (2007).

The Energy Companies argue that the district court's order remanded the complaints on a ground that cannot be "colorably characterized as subject-matter jurisdiction." *Id.* Specifically, the Energy Companies contend that the district court remanded the complaints based on a merits determination when it held that "federal common law d[id] not govern the [Counties'] claims" and therefore "d[id] not preclude [the Counties] from asserting . . . state law claims."

We reject this argument.  The district court ordered remand based on its view that the cases were "improperly

---

made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.

28 U.S.C. § 1447(c).

removed to federal court" because the Energy Companies failed to show that "the case[s] . . . fit[] within one of a small handful of small boxes" providing for subject-matter jurisdiction. Put simply, the district court concluded that it "lack[ed] subject matter jurisdiction." 28 U.S.C. § 1447(c). Even if the district court erred in reaching this conclusion, "review is unavailable no matter how plain the legal error in ordering the remand." *Kircher v. Putnam Funds Tr.*, 547 U.S. 633, 642 (2006) (citing *Briscoe*, 432 U.S. at 413 n.13). To the extent *Powerex* requires that we determine whether the district court's conclusion that "federal common law [d]id not govern the [Counties'] claims" was "at least arguable," *Townsquare Media, Inc. v. Brill*, 652 F.3d 767, 775 (7th Cir. 2011) (citing *Atl. Nat'l Tr.*, 621 F.3d at 937–38, 940), we hold that it was, *see City of Oakland v. BP p.l.c.*, — F.3d — (9th Cir. 2020) (holding that the district court erred in concluding that there was subject-matter jurisdiction on the ground that the plaintiffs' state-law nuisance claims were "necessarily governed by federal common law").

B

We next consider the Energy Companies' argument that the second clause of § 1447(d) (the "exception clause") requires us to conduct plenary review of the district court's remand order. We have interpreted the exception clause as giving us the authority to review the district court's remand order only to the extent that the order addresses the statutory sections listed in the clause. *See Patel v. Del Taco, Inc.*, 446 F.3d 996, 998 (9th Cir. 2006). In *Patel*, the defendants removed a state-court complaint to federal court under § 1443(1), which provides for removal of civil-rights cases. *Id.* The district court granted the plaintiff's motion for remand on the ground that removal was not proper under

either § 1441 or § 1443(1).  *Id.*  We held that, under § 1447(d), we lacked jurisdiction "to review the remand order based on § 1441" and thus dismissed the defendants' appeal to the extent it was based on that section.  *Id.*[5]  At the same time, we held that we had jurisdiction "to review the remand order based on . . . § 1443(1)."  *Id.*  The reasoning in *Patel* applies directly to our case.  Under § 1447(d), as interpreted in *Patel*, we have jurisdiction to review the Energy Companies' appeal to the extent the remand order addresses § 1442(a)(1), but we lack jurisdiction to review their appeal from the portions of the remand order considering the seven other bases for subject-matter jurisdiction.

Arguing against this conclusion, the Energy Companies contend that when a suit is "removed pursuant to section 1442," 28 U.S.C. § 1447(d), the district court's entire remand order is subject to plenary review.  The Energy Companies base this argument on a Seventh Circuit case, *Lu Junhong v. Boeing Co.*, which concluded that because § 1447(d) authorizes appellate review of "an order," it authorizes review of "the order itself," not just "particular reasons *for* an order."  792 F.3d 805, 812 (7th Cir. 2015).  In reaching this conclusion, the Seventh Circuit relied on *Yamaha Motor Corp., U.S.A. v. Calhoun*, which construed a statute (28 U.S.C. § 1292(b)) giving appellate courts jurisdiction to review interlocutory orders that a district court certifies for

---

[5] *Patel* considered an earlier version of § 1447(d), which did not include § 1442 in the exception clause.  *See* Removal Clarification Act of 2011, Pub. L. No. 112-51, § 2, 125 Stat. 545, 546 (2011).

immediate appeal. 516 U.S. 199 (1996).[6] *Yamaha* concluded that § 1292(b) gives an appellate court jurisdiction over "any issue fairly included within the certified order because 'it is the *order* that is appealable, and not the controlling question identified by the district court.'" *Id.* at 205 (citation omitted).

The Energy Companies urge us to follow *Lu Junhong* notwithstanding our decision in *Patel* for two reasons. First, they argue that *Patel* has been abrogated by an act of Congress. After *Patel* was decided, Congress enacted the Removal Clarification Act of 2011, which amended § 1447(d) to allow for review of remand orders in cases removed pursuant to § 1442. *See* Removal Clarification Act of 2011, Pub. L. No. 112-51, § 2, 125 Stat. 545, 546 (2011). According to the Energy Companies, Congress's failure to amend the reference in § 1447(d) to orders "reviewable by appeal," means that Congress intended to adopt *Yamaha*'s interpretive approach and therefore authorized plenary review of remand orders for cases removed pursuant to § 1442.[7] Second, the Energy Companies argue that we are not bound by *Patel* because it was not well reasoned: it did not provide

---

[6] Section 1292(b) provides that "[w]hen a district judge, in making . . . an order not otherwise appealable" determines that the order meets certain criteria and that "an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order," and "[t]he Court of Appeals . . . may thereupon, in its discretion, permit an appeal to be taken from such order." 28 U.S.C. § 1292(b).

[7] The Energy Companies do not argue that *Yamaha* abrogated *Patel*, nor could they, given that *Yamaha* was decided in 1996—a decade before *Patel*—and thus is not "intervening higher authority." *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc).

any grounds for its conclusion that we lacked jurisdiction to conduct a plenary review of the remand order.

Both of these arguments implicate our doctrine of stare decisis. We have long held that "one three-judge panel . . . cannot reconsider or overrule the decision of a prior panel," *United States v. Gay*, 967 F.2d 322, 327 (9th Cir. 1992), unless "our prior circuit authority is clearly irreconcilable with the reasoning or theory of intervening higher authority," *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc).

There is no intervening judicial authority that would abrogate *Patel*. Neither the Supreme Court nor an en banc panel of this court has issued a decision after *Patel* was decided in 2006 that is clearly irreconcilable with *Patel*'s conclusion that § 1447(d) limits our review to the grounds for removal covered by the exception clause. Therefore, we consider only the effect of Congress's amendment of § 1447(d) in 2011.

Before Congress's amendment of § 1447(d), every circuit court that had addressed this issue agreed with our reading of § 1447(d).[8] Although *Yamaha* was decided in 1996 (ten years before we decided *Patel*), no circuit court had applied *Yamaha* to § 1447(d) or discussed its applicability in that context. Therefore, when Congress amended § 1447(d) to

---

[8] *See Alabama v. Conley*, 245 F.3d 1292, 1293 n.1 (11th Cir. 2001); *Davis v. Glanton*, 107 F.3d 1044, 1047 (3d Cir. 1997); *Thornton v. Holloway*, 70 F.3d 522, 524 (8th Cir. 1995); *State Farm Mut. Auto. Ins. Co. v. Baasch*, 644 F.2d 94, 97 (2d Cir. 1981); *Detroit Police Lieutenants & Sergeants Ass'n v. City of Detroit*, 597 F.2d 566, 567 (6th Cir. 1979); *Robertson v. Ball*, 534 F.2d 63, 66 & n.5 (5th Cir. 1976); *Noel v. McCain*, 538 F.2d 633, 635 (4th Cir. 1976).

insert "1442 or" before "1443," Removal Clarification Act of 2011 § 2, it was against a backdrop of unanimous judicial interpretation of § 1447(d) as permitting review of only the grounds for removal identified in the exception clause. Congress did not give any indication that it intended to overrule the then-unanimous interpretation of § 1447(d) as limiting judicial review of a remand order to the grounds listed in the exception clause. We "presume that Congress acts 'with awareness of relevant judicial decisions.'" *United States v. Alvarez-Hernandez*, 478 F.3d 1060, 1065 (9th Cir. 2007) (quoting *United States v. Male Juvenile*, 280 F.3d 1008, 1016 (9th Cir. 2002)). And "when 'judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a new statute indicates, as a general matter, the intent to incorporate [the statute's] . . . judicial interpretations as well." *Id.* (quoting *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 85 (2006)). Accordingly, we conclude that Congress did not abrogate *Patel* sub silentio but rather "inten[ded] to incorporate" *Patel*'s (and six other circuits') interpretation of § 1447(d). *Id.* (citation omitted). The Fourth Circuit has reached the same conclusion. *See Mayor & City Council of Baltimore v. BP P.L.C.*, 952 F.3d 452, 461 (4th Cir. 2020) ("[T]he fact that Congress later added § 1442 as an exception to § 1447(d)'s no-appeal rule for remand orders does not undermine our holding . . . that appellate courts only have jurisdiction to review those grounds for removal that are specifically enumerated in § 1447(d)."). We therefore conclude that Congress's amendment of § 1447(d) did not abrogate our interpretation in *Patel*.

The Energy Companies also argue that we are not bound by *Patel* because it was not well reasoned and failed to analyze *Yamaha* or the statutory interpretation arguments

discussed in *Lu Junhong*. Were we writing on a clean slate, we might conclude that *Lu Junhong* provides a more persuasive interpretation of § 1447(d) than *Patel*. *But see Baltimore*, 952 F.3d at 459–60. Precedents, however, do not cease to be authoritative merely because counsel in a later case advances new arguments. *See United States v. Ramos-Medina*, 706 F.3d 932, 939 (9th Cir. 2013) ("This panel is not free to disregard the decision of another panel of our court simply because we think the arguments have been characterized differently or more persuasively."). Therefore, we remain bound by *Patel* until abrogated by an intervening higher authority.

Applying *Patel*'s reading of § 1447(d), we may review the district court's remand order only to the extent it addresses § 1442(a)(1). 446 F.3d at 998; *accord Baltimore*, 952 F.3d at 461. Accordingly, we dismiss the Energy Companies' appeals for lack of jurisdiction to the extent the Energy Companies seek review of the district court's ruling as to other bases for subject-matter jurisdiction. *See Patel*, 446 F.3d at 1000.

## III

We now turn to the single ground of removal that we have jurisdiction to review: the question whether the district court erred in holding that there was no subject-matter jurisdiction under the federal-officer removal statute, 28 U.S.C. § 1442(a)(1). We review questions of statutory construction and subject-matter jurisdiction de novo. *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1315 (9th Cir. 1998). The defendant has the burden of proving by a preponderance of the evidence that the requirements for removal jurisdiction

have been met. *Leite v. Crane Co.*, 749 F.3d 1117, 1122 (9th Cir. 2014).

As currently drafted, § 1442(a)(1) provides for removal of:

> A civil action . . . that is against or directed to . . . [t]he United States or any agency thereof or any officer (*or any person acting under that officer*) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

28 U.S.C. § 1442(a)(1) (emphasis added).

In order to invoke § 1442(a)(1), a private person must establish: "(a) it is a person within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and [the] plaintiff's claims; and (c) it can assert a colorable federal defense." *Riggs v. Airbus Helicopters, Inc.*, 939 F.3d 981, 986–87 (9th Cir. 2019) (quoting *Fidelitad, Inc. v. Insitu, Inc.*, 904 F.3d 1095, 1099 (9th Cir. 2018)). To demonstrate a causal nexus, the private person must show: (1) that the person was "acting under" a federal officer in performing some "act under color of federal office," and (2) that such action is causally connected with the plaintiffs' claims. *See Goncalves ex rel. Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1244 (9th Cir. 2017).

The parties focus on the first prong: whether the Energy Companies were "acting under" a federal officer's directions. We begin by providing some background. The federal officer removal statute has existed in some version since 1815. *Willingham v. Morgan*, 395 U.S. 402, 405 (1969). Although Congress has amended the statute on a number of occasions, *see Watson v. Philip Morris Cos.*, 551 U.S. 142, 147–49 (2007), most recently in 2011, *see* Removal Clarification Act of 2011 § 2, the purpose of the statute has remained essentially the same: "The statute's history and th[e] Court's cases demonstrate that its basic purpose is to protect the Federal Government from the interference with its operations that would ensue were a State able, for example, to arrest and bring to trial in a State court for an alleged offense against the law of the State, officers and agents of the Government acting . . . within the scope of their authority." *Watson*, 551 U.S. at 150 (cleaned up) (quoting *Willingham*, 395 U.S. at 406). Congress thought that allowing a federal officer to remove a state action was necessary because "[s]tate-court proceedings may reflect 'local prejudice' against unpopular federal laws or federal officials" and "deprive federal officials of a federal forum in which to assert federal immunity defenses." *Id.* (citation omitted). Moreover, state-court proceedings may have the effect of impeding or delaying the enforcement of federal law. *Id.* The federal officer removal statute should be "liberally construed" to fulfill its purpose of allowing federal officials and agents who are being prosecuted in state court for acts taken in their federal authority to remove the case to federal court. *Id.* at 147 (citation omitted).

When Congress first enacted § 1442(a)(1), the phrase "officer of the United States" was generally understood as a term of art that referred to federal officers who "exercis[ed] significant authority." *Int'l Primate Prot. League v. Adm'rs*

*of Tulane Educ. Fund*, 500 U.S. 72, 81 (1991) (quoting *Buckley v. Valeo*, 424 U.S. 1, 126 (1976)).  In 1948, Congress amended the statute to include the language "person[s] acting under" any officer of the United States.  Act of June 25, 1948, ch. 646, § 1442, 62 Stat. 869, 938 (codified at 28 U.S.C. § 1442).  At the time, this change was understood as extending the section to apply to employees, as well as officers.  *Int'l Primate Prot. League*, 500 U.S. at 84 (quoting H.R. Rep. No. 80-308, at A134 (1947)).

The Supreme Court subsequently interpreted the term "person acting under that officer" as extending to a "private person" who has certain types of close relationships with the federal government.  *See Watson*, 551 U.S. at 152–53.  The Supreme Court has identified a number of factors courts should consider in determining whether a private person is "acting under" a federal officer for purposes of § 1442(a)(1).  Among other things, the Court considers whether the person is acting on behalf of the officer in a manner akin to an agency relationship.  *See id.* at 151 (private person must be authorized to act "with or for federal officers"); *see also Goncalves*, 865 F.3d at 1246 (holding that a private person qualified as "acting under" a federal officer when it was "serving as the government's agent"); *Cabalce v. Thomas E. Blanchard & Assocs., Inc.*, 797 F.3d 720, 729 (9th Cir. 2015) (noting that a company's independent-contractor status supported the conclusion that it was not acting under a federal officer).  The Court also considers whether the person is subject to the officer's close direction, such as acting under the "subjection, guidance, or control" of the officer, or in a relationship which "is an unusually close one involving detailed regulation, monitoring, or supervision."  *Watson*, 551 U.S. at 151, 153 (citation omitted); *see also Leite*, 749 F.3d at 1120, 1124 (holding that a defense contractor

properly removed a case under § 1442(a)(1) based, in part, on "the Navy's detailed specifications regulating the warnings that equipment manufacturers were required to provide"). Third, the Court considers whether the private person is assisting the federal officer in fulfilling "basic governmental tasks" that "the Government itself would have had to perform" if it had not contracted with a private firm. *Watson*, 551 U.S. at 153–54; *see also Goncalves*, 865 F.3d at 1246–47 (holding that private person fulfilled a basic governmental task by pursuing subrogation claims on behalf of a government agency). Finally, taking into account the purpose of § 1442(a)(1), the Court has considered whether the private person's activity is so closely related to the government's implementation of its federal duties that the private person faces "a significant risk of state-court 'prejudice,'" just as a government employee would in similar circumstances, and may have difficulty in raising an immunity defense in state court. *Watson*, 551 U.S. at 152 (citation omitted).

As the Supreme Court has indicated, and circuit courts have held, a government contractor may meet the criteria for "acting under" an officer under certain circumstances. *See id.* at 153–54. *Watson* cited with approval a Fifth Circuit case, *Winters v. Diamond Shamrock Chemical Co.*, which held that a government contractor could remove a state action under § 1442(a) because the contractor was acting on behalf of the government to produce Agent Orange, a carcinogenic herbicide used as part of the war strategy in Vietnam, and was acting under the close direction of the federal government which had provided "detailed specifications concerning the make-up, packaging, and delivery of Agent Orange," as well as "on-going supervision . . . over the formulation, packaging, and delivery of Agent Orange." 149 F.3d 387, 399–400 (5th Cir. 1998). Further, the contractor provided a product that

was "used to help conduct a war" and at least arguably "performed a job that, in the absence of a contract with a private firm, the Government itself would have had to perform." *Watson*, 551 U.S. at 153–54; *see also Goncalves*, 865 F.3d at 1246–47 (holding that a private contractor was "acting under" a federal officer when it was serving as an agent for the government and assisting the government in fulfilling basic duties).

By contrast, a person is not "acting under" a federal officer when the person enters into an arm's-length business arrangement with the federal government or supplies it with widely available commercial products or services. *See Cabalce*, 797 F.3d at 727–29; *Baltimore*, 952 F.3d at 463–64; *cf. Goncalves*, 865 F.3d at 1244–47; *Winters*, 149 F.3d at 398–400. Nor does a person's "*compliance* with the law (or *acquiescence* to an order)" amount to "'acting under,' a federal officer who is giving an order or enforcing the law." *Watson*, 551 U.S. at 152. This is true "even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored." *Id.* at 153. We may not interpret § 1442(a) so as to "expand the scope of the statute considerably, potentially bringing within its scope state-court actions filed against private firms in many highly regulated industries." *Id.*

The Energy Companies argue that they meet the criteria under § 1442(a) to remove the Counties' complaints because they were "persons acting under" a federal officer based on three agreements with the government.[9] They also argue that

---

[9] We have held that corporations are "person[s]" under § 1442(a)(1), *Goncalves*, 865 F.3d at 1244, so there is no dispute that the Energy Companies meet this requirement.

there is a causal nexus between their actions under those agreements and the Counties' claims.  We consider each of these agreements in turn.

We first consider CITGO's fuel supply agreements with the Navy Exchange Service Command (NEXCOM).  Under these contracts, CITGO agreed to supply gasoline and diesel fuel to NEXCOM for service stations on approximately forty U.S. Navy installations.  The government resold the CITGO fuel at NEXCOM facilities to individual service members. The Energy Companies point to three sets of contractual requirements in the fuel supply agreements which they claim establish the "subjection, guidance or control" necessary to invoke federal jurisdiction, namely:  (1) "fuel specifications" that required compliance with specified American Society for Testing and Material Standards and required that NEXCOM have a qualified independent source analyze the products for compliance with those specifications; (2) provisions that give the Navy the right to inspect delivery, site, and operations; and (3) branding and advertising requirements.[10]

---

[10] The Energy Companies cite the following sections in the fuel supply agreements.  First, the fuel specification provisions require CITGO to "provide high quality gasoline product identical to or the same product as supplied [by] the contractor[']s commercially operated gasoline service station [e.g., regular leaded, regular unleaded, and premium unleaded]." The "[m]otor fuel products supplied" by CITGO were required to comply with the generic standards promulgated by the American Society for Testing and Materials, and the Navy agreed to "have a qualified independent source analyze the products provided [by CITGO]," including any product that was "suspected of being faulty/inferior."  Second, the inspection provisions gave the Navy the right to "visually check truck compartment(s) before and after deliveries" of fuel and to conduct "general operational reviews," which "might also include inspections of . . . vehicles."  Third, the branding provisions require CITGO to "supply all necessary equipment, including signage, for each facility," to

This argument fails.  The provisions on which the Energy Companies rely "seem typical of any commercial contract" and are "incidental to sale and sound in quality assurance." *Baltimore*, 952 F.3d at 464.  The contracts evince an arm's-length business relationship to supply NEXCOM with generally available commercial products.  *See id.*  Supplying gasoline to the Navy for resale to its employees is not an activity so closely related to the government's implementation of federal law that the person faces "a significant risk of state-court prejudice."  *Watson*, 551 U.S. at 152.  Accordingly, we hold that CITGO was not "acting under" a federal officer by supplying gasoline and diesel fuel to NEXCOM pursuant to fuel supply contracts.

Second, the Energy Companies point to the 1944 unit agreement[11] for the petroleum reserves at Elk Hills between Standard Oil Company of California (Chevron Corporation's predecessor in interest) and the U.S. Navy.  We have detailed the history of this unit agreement at length in our prior decisions.  *See United States v. Standard Oil Co. of Cal.*, 545 F.2d 624, 626–28 (9th Cir. 1976).  In brief, Standard owned one-fifth and the Navy owned four-fifths of the

---

"incorporate the Government logo on at least three . . . provided signage fixtures," and to supply "[a] standard service station rotating-fixed neon or incandescent street corner station identification sign . . . for each Government fueling station."  And CITGO could submit "proposals on [CITGO] branded products," but the government was not obligated to market "said product under [CITGO's] brand or trade name."

[11] "A unit agreement was at that time and still is a common arrangement in the petroleum industry where two or more owners have interests in a common pool.  Under such an arrangement, the pool is operated as a unit and the parties share production and costs in agreed-upon proportions."  *United States v. Standard Oil Co. of California*, 545 F.2d 624, 627 (9th Cir. 1976).

approximately 46,000 acres comprising the Elk Hills reserves. As is common in the oil exploration and production industry, the two landowners entered into a unit agreement to coordinate operations in the oil field and production of the oil. Because the Navy sought to limit oil production in order to ensure the availability of oil reserves in the event of a national emergency, the unit agreement required that both Standard and the Navy curtail their production and gave the Navy "exclusive control over the exploration, prospecting, development, and operation of the Reserve." To compensate Standard for reducing production, the unit agreement gave Standard the right to produce a specified amount of oil per day (an average of 15,000 barrels per day). Both parties could dispose of the oil they extracted as they saw fit, and neither had a "preferential right to purchase any portion of the other's share of [the] production."

Standard's activities under the unit agreement did not give rise to a relationship where Standard was "acting under" a federal officer for purposes of § 1442. Standard was not acting on behalf of the federal government in order to assist the government perform a basic government function. Rather, Standard and the government reached an agreement that allowed them to coordinate their use of the oil reserve in a way that would benefit both parties: the government maintained oil reserves for emergencies, and Standard ensured its ability to produce oil for sale. When Standard extracted oil from the reserve, Standard was acting independently, *see Cabalce*, 797 F.3d at 728–29, not as the Navy's "agent," *Goncalves*, 865 F.3d at 1246; *see also* H.R. Rep. No. 112-17, pt. 1, at 3 (2011) ("Removal is allowed only when the acts of Federal defendants are essentially ordered or demanded by Federal authority . . . ."). And Standard's arm's-length business arrangement with the Navy does not

32      COUNTY OF SAN MATEO V. CHEVRON CORP.

involve conduct so closely related to the government's implementation of federal law that the Energy Companies would face "a significant risk of state-court 'prejudice.'" *Watson*, 551 U.S. at 152.[12]

Finally, we consider the Energy Companies' lease agreements, entitled "Oil and Gas Leases of Submerged Lands Under the Outer Continental Shelf Lands Act." Under these standard-form leases, the government grants the lessee the right to explore and produce oil and gas resources in the submerged lands of the outer Continental Shelf, and in exchange the lessee agrees to pay the government rents and royalties.   The Energy Companies argue that the lessee Energy Companies were "acting under" a federal officer because the leases require that the lessees drill for oil and gas pursuant to government-approved exploration plans and that the lessees sell some of their production to certain buyers; specifically, lessees must offer twenty percent of their production to "small or independent refiners" and must give

---

[12] At oral argument, the Energy Companies argued for the first time that Standard was "acting under" a federal officer pursuant to the Naval Petroleum Reserves Production Act of 1976, Pub. L. 94-258, § 201, 90 Stat. 303 (1976), which directed the Secretary of the Navy to "produce such reserves [including the Elk Hill reserve] at the maximum efficient rate consistent with sound engineering practices for a period not to exceed six years" and to "sell or otherwise dispose of the United States share of such petroleum produced from such reserves."   § 201, 90 Stat. at 308. Nothing in the record indicates that the Secretary of the Navy "ordered or demanded,"  H.R. Rep. No. 112-17, pt. 1, at 3 (2011), *reprinted in* 2011 U.S.C.C.A.N. 420, 422, that Standard produce oil on behalf of the Navy, *see also Baltimore*, 952 F.3d at 471 ("[W]e are left wanting for pertinent details about Standard's role in operating the Elk Hills Reserve and producing oil therefrom on behalf of the Navy.").   Therefore, the Energy Companies' reliance on this Act is misplaced.

the United States the right of first refusal in time of war or "when the President of the United States shall so prescribe."

This argument also fails. The leases do not require that lessees act on behalf of the federal government, under its close direction, or to fulfill basic governmental duties. Nor are lessees engaged in an activity so closely related to the government's function that the lessee faces "a significant risk of state-court 'prejudice.'" *Id.* In fact, the lease requirements largely track legal requirements, for instance, that the lessee offer 20 percent of the "crude oil, condensate, and natural gas liquids produced on [the] lease . . . to small or independent refiners," 43 U.S.C. § 1337(b)(7), and that "[i]n time of war, or when the President shall so prescribe, the United States shall have the right of first refusal to purchase at the market price all or any portion of any mineral produced from the outer Continental Shelf," 43 U.S.C. § 1341(b). Mere "compl[iance] with the law, even if the laws are 'highly detailed, and thus leave [an] entity 'highly regulated,'" does not show that the entity is "acting under" a federal officer. *Goncalves*, 865 F.3d at 1245 (quoting *Watson*, 551 U.S. at 151–53). We agree with the Fourth Circuit that "the willingness to lease federal property or mineral rights to a private entity for the entity's own commercial purposes, without more" cannot be "characterized as the type of assistance that is required" to show that the private entity is "acting under" a federal officer. *Baltimore*, 952 F.3d at 465. Accordingly, the leases on which the defendants rely do not give rise to the "unusually close" relationship where the lessee was "acting under" a federal officer. *Watson*, 551 U.S. at 153.

Because we conclude that the Energy Companies have not carried their burden of proving by a preponderance of the

34      COUNTY OF SAN MATEO V. CHEVRON CORP.

evidence that they were "acting under" a federal officer, we do not reach the question whether actions pursuant to the fuel supply agreement, unit agreement, or lease agreement had a causal nexus with the Counties' complaints, or whether the Energy Companies can assert a colorable federal defense. *See Fidelitad*, 904 F.3d at 1099.

\*\*\*

We affirm the district court to the extent it held there was no subject-matter jurisdiction under 28 U.S.C. § 1442(a)(1), and we dismiss the remainder of the appeals for lack of jurisdiction under § 1447(d).

**AFFIRMED IN PART; DISMISSED IN PART**.[13]

---

[13] The Counties' Motion for Partial Dismissal (ECF No. 41) is **GRANTED**.  *See Patel*, 446 F.3d at 1000.  Costs shall be taxed against the Energy Companies.